And for the appellant we have John Blenard, for the app, Lee, Mark Cochran, and William Strain. Are you guys splitting time? I don't know. Okay, who's going to be doing the arguing? I don't know. Thank you.       Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Opposing counsel, please report. The appellant's position in this case is that the amendment to the original trust agreement, which was the trust agreement was done in 2001, the amendment done in 2005, is that the amendment was invalid for the reason that the original trust did not contain a provision allowing the grantor to amend the trust. The trial court addressed that, the resolution of that question, basically by determining whether or not the trust itself, as originally prepared or enacted in 2001, was in effect an Illinois land trust. What kind of a trust is it? It's our opinion, Your Honor, our position, that the trust is a, what would be called an inter-bibles trust, conventional trust. A revocable living trust or irrevocable? It would be irrevocable on our position because of the fact that the right to revoke or amend was not contained in the trust document itself. Thank you. Thank you. Our position is that, contrary to the finding of the trial court, that the trust does not constitute an Illinois land trust because it does not, in one regard, it does not specify to whom the power of direction was granted from time to time during the life of the trust. Is that necessary in a land trust? I believe it is, yes. And I point to the original trust was set up by Mrs. Schneff, the mother of the parties to the case, during her, excuse me. I thought you said something. No. Okay. Go ahead, please. That was set up originally that she would have the life interest of the income from all of the property that was in the trust, and then as originally created, the trust then set up basically a life estate for a son, Lindle. Lindle's provision said that he was entitled to the income, basically, from the trust, but he had no authority whatsoever to deal with the trust assets. So if a literal reading of that trust is to apply, Lindle could not exercise a power of direction after his mother passed away. The provisions of the trust agreement, which I believe Judge Brannon indicated, showed that there was a power of direction from time to time, are not correct for that reason. The provision that I believe he referred to said that the grantors and slash or beneficiaries would have the power of direction or the power to direct the trustee. Of course, during the time that Lindle would have been a lifetime beneficiary, had the purported amendment not been done, he... Well, when the court used the term grantor, was the court referring to the settler? I believe so, yes. Those words are in the trust, which I think makes it also problematic because had Mrs. Schneff passed away and the amendment not been effective, which is our position, then Lindle would have been entitled to the next successive life interest, and then would his... He clearly has no power to direct. There would be no grantor living at that point in time, so does that mean the other beneficiaries would have the power to direct the trustee who was one of the beneficiaries? It just is not a workable situation. If we agree with you, how should this trust be designated and who, if anyone, would have the powers to amend it from its original terms? No one. So it continues in perpetuity? That's a potential problem. Well, that's why I'm asking. You've cited problems with the other side's views. This strikes me as a potential one with yours. You have no thoughts on this? Well, the trust, I think... You're advising who's... It's the bank who's the trustee? There is no bank trustee. That's one of the other... Okay, I was... I... So... The trustee is one of the beneficiaries at the present time under the originally designated successor, Raymond Schnepf, the son of the trustor grantor. So your counsel for the trustee, what do you say? Well, the original trust said that it was to terminate, I believe, at the death of Lindell, and then the property was to be converted to cash and distributed. To whom? To all of the children of Mrs. Schnepf, to the exclusion of Lindell. So why does that create a perpetuity problem? Well, I'm not sure it does. We've not raised that as an issue. But no one, in your view, can affect the original terms of the trust? That's our view, Your Honor, because it is... ...living trust, which was later... If it is irrevocable, why doesn't the trust instrument itself have to say, in it, it's irrevocable? I mean, isn't that typical of being the title? Well, it might be typical, but it's not required. The title doesn't control. The words of the document control, and I believe that the case law in Illinois is that unless the grantor trusts or reserves the right to revoke or amend, it is irrevocable and non-amendable. It did not reserve that right? That's correct. Does opposing counsel refute that proposition? The law in Illinois is that unless the right to revoke is reserved, the law is that it is considered an irrevocable trust. My understanding is opposing counsel does not refute that proposition. But it's my mistake to read the briefs as well, so... Their position was to, in my view, to do an end-run around that rule by coming up with the idea that this was a land trust. And our position is that it doesn't satisfy the requisites of a land trust because there is a defect or a lack of a person who holds the power of direction, at least after the death of Misha Sneff. And then, in addition to that, trust provisions, paragraphs 12, 13, 14, and 15, all deal with the contemplation that the trustee would be handling income from the trust property, which is not a usual situation with a land trust. The trustee in the land trust is basically a title holder who does nothing except convey the property, mortgage it, lease it, enter into lease agreements upon direction of the person who has the power of direction. One exception, I think, to that is that some trust provisions or some land trusts contain a limited time period, usually 20 years, and then there's a direction for the trustee to sell the property and dispose of the proceeds of the beneficiary. But that provision is absent from this trust, and of course we haven't gotten that far in the time frame anyway. So we think those provisions are inconsistent with the document being categorized as an Illinois land trust. And additionally, I'm not going any further on those points that we've raised in our brief, but with respect to the question of the summary judgments that were entered in this case, when the trial court heard the motion for judgment on the pleadings, it lasted for two to three hours in the morning, and at the end of that Judge Brannon indicated that the other motions would be taken up at a later date. In the transcript on page 88 of the motion hearing conducted June 3rd, which was strictly limited to the motion for judgment on the pleadings, Judge Brannon stated, all right, needless to say, the court's going to take it under advisement, and I think due to the fact that it is now 11-15 and the fact that depending upon how the court's ruling could be dispositive of the remaining issues, would it sound logical to everybody concerned that we simply continue the other matters until the court makes a ruling on this motion, the motion for judgment on the pleadings. And he addressed each counsel present. Everybody agreed that that was the way it would proceed. Then, of course, Judge Brannon's ruling was entered later, and in that ruling he denied our motion for judgment on the pleadings, denied our motion for summary judgment, and granted the defendants, one of the defendants' motions for summary judgment based upon his determination that this trust was a land trust. And I guess our fallback position is that we effectively, by that procedure, were deprived of our right to argue our motion for summary judgment, and that never happened. I think we raised that in the motion to reconsider. Right, you did. And then how did Judge Brannon explain the fact that he went ahead and granted those motions? He didn't, to my satisfaction. I did not see any explanation. Other counsel, or holding counsel, argued that we'd had ample time to take care of that, but we were waiting for the ruling based upon the way the court just wrapped up the motion for judgment on the pleadings. I was expecting, had we won the motion for judgment on the pleadings, then that would be one. Had we lost, as we did, that we would have come back to court to argue the motions for summary judgment. I think it's interesting to note that when you look at Judge Brannon's ruling, I failed to see anything in his ruling which is based upon issues that were raised in the motions for summary judgment. He limits his rulings, or the bases for his rulings, to the trust document itself, and then he also mentions the deeds into trust. Now, perhaps that's something that we should have stressed more in our brief. We did mention it, but Judge Brannon makes reference to the language in the deed as containing powers that the trustee would have had, but when you look at the deed, the deed says that the trustee has the power to convey the property, to mortgage the property, to lease the property, a variety of different things, all of which are negated by the trust agreement itself. Because in a land trust agreement, the trustee is prohibited from engaging in any of those acts unless directed by the person who has the power of direction. So, I have difficulty with Judge Brannon's ruling because he's saying the deed supports the fact that it is a land trust. Our position is the trust should stand on its own, and you can't consider the deed, because the deed has provisions which are flat out contrary to the provisions of a typical Illinois land trust, which say that the only authority the trustee has is to act upon the direction of the person who has the power of direction. And then, again, we go back to the position that at times, as originally drafted, there would not have been anyone who had the power of direction. Is there a factual dispute in this case? Well, based upon Judge Brannon's ruling, you can't determine what the factual dispute is. I'm asking what you think. Well, I don't think there is. I mean, I think that our motion for judgment on the pleading should have been granted because we alleged that the trust was done, there was a purported amendment alleged, the defendants admitted all that, and so those documents were part of the pleadings. And if you look at those documents, our position was that they're not adequate, or that the original trust was not adequate to create a land trust. So the answer to my question is you don't believe there's a factual dispute? I think not. There could have been some factual disputes raised in conjunction with the summary judgment motion, had we been allowed to argue. And I think I caught, during my argument to Judge Brannon that resulted in this ruling, I caught myself a couple of times making reference to factual circumstances, and then I cut myself off and made the comment that that doesn't apply to the motion on the pleadings, it applies to the summary judgment, so I'll wait for that. And one of those factual things would be the conduct of the attorney, Mr. Conrad, he testified in his deposition that after Mrs. Schneff died, he applied for a federal employer's ID number, taxpayer number, for the trust. You would not do that for a land trust because the land trustee doesn't handle money. So I think those factual considerations indicated that there was no intention that the trust be a land trust from the get-go. That was an afterthought, I think, to get around our contention that the original trust could not be amended. So we would respectfully ask that the court reverse the trial. Thank you. Thank you, counsel. You will have rebuttal. I don't think I asked that. Are you both arguing, or just one? Please proceed. Good morning. Good morning. Judge Brannon got it right. The Melita Maxson Trust was an Illinois land trust. And I think we've fully addressed appellant's efforts to counter Judge Brannon's conclusion. Counsel, if we disagree with your assessment from the judges that it's a land trust, an Illinois land trust, do you lose? Or do you have any other fallback position? Yes, we have fallback. Because I think, contrary to what Mr. Leonard stated, I think in Illinois a right to modify or revoke or amend a trust can either be explicitly stated or implied from the language of the agreement. So I think the trust agreement used here has language in there that would clearly imply, outside the context of a land trust, but we think it clearly is a land trust, which is freely amendable. But if it wasn't a land trust, there's still language in that trust in terms of who has the beneficial interest and the power to direct the trustees and essentially to take the whole property back, which would create an implied. So we'd have to infer this from the language in the trust, even though the precise language giving that power is not present? Well, there's language giving the beneficiary, which during the lifetime of Melita was 100% Melita, and she has the power to direct the trustee to do whatever she wanted to with the corpus of the trust. There's no specific language in there that says, I, as settler, reserve the right to revoke this. It's implied from this other language would be our position. Which article is that? Article 3 and Article 10 of the trust agreement. So the case law says that we can imply that it is revocable, even if the instrument itself doesn't specifically state it. Right. And that's in Scott on trust and the restatement of trust also provides that. You know, and keynote on land trust includes discussion of that. But you look at the entire, you're looking for the intent of the settler. And from the whole instrument read as a whole, you can imply or infer a right to revoke that is adequate. One of the things that I, try not to repeat anything we've put in any of our file, prior filings, but one of the things I'd like to bring to the court's attention, in the 1981 version of keynote on land trust, he has a specific discussion of including the miscellaneous provisions that Mr. Leonard has pointed out, trying to undercut the validity of the land trust. You know, the spendthrift provisions, the dealing with income, the exculpation of the trustee. Those are all included in keynote's 1981 version, starting at page 8-76, as provisions that can be typically included in a land trust and not undercut its validity as a land trust. Another point I would like to make is that, in Mr. Leonard's brief, they can see that if this is a land trust, it's freely amendable. And given that, I think it helps simplify things, so we don't even need to consider the 2005 amendment and what it says. Because if it's a land trust, it's freely amendable, and what that amendment did has no effect on whether it was a land trust in 2001. And it doesn't matter whether after that amendment it's still a land trust, or now it's a conventional trust. So what was accomplished by the 2005 amendment really has no bearing on whether the original trust as written was an Illinois land trust. And another point that Mr. Leonard raised in his reply brief, which we didn't have a chance to respond to. If it was entitled or intended to be an Illinois land trust, why wasn't that ever set forth in the document itself? The only thing the document does not include is at the top heading point in a land trust. It includes every other thing that is classically included in a land trust. It has the, you know, that the trustee has equitable title and legal title, that the beneficiaries have control over the property of the trustee. But Lindle didn't have control. Lindle did not have control over the property under the terms of the trust. He was not a beneficiary. Melita, his mother, was the sole beneficiary during her lifetime. He only succeeded to a life estate after her death. So during her life... Is that typical of a land trust? A land trust often provides, and Keno talks about it, provides for remainder interest, contingent interest, successor interest, after the initial beneficiary's term. With limitations on what the successor can do? Yes. They include exact, you know... In Keno they have examples where a remainder interest, beneficial interest, you can bar them for exercising the normal rights of the beneficial interest. You know, he just gets the income. He doesn't have any power of direction. Who would be? Who would have the power of direction for the trustee after Melita died? After Melita's death, under the agreement, if it hadn't been changed, Lindle would get the money, but it would stay that way until he died. There would be no ability to... So nobody could direct the trustee. Right. During his remaining life. And the trustee had no power to deal independently with the property. According to your theory, the trustee could only act on direction of the beneficial... Right, he couldn't be sold or disposed of, but it would continue, and the income off it would continue to go to the life interest, which would be Lindle after his mother's death. Well, I'm surprised, and perhaps I need to read some more about trust, but your representation to the court is that Keno and other land trust authorities apparently say that you can have a successor beneficiary who owns a personal property but can do nothing with that, cannot transfer it to anyone, do anything except take the income that is generated. Right. Okay, I wasn't aware of that. And that's provided that there are a lot of state planning avenues you can take with a land trust agreement. We don't see a lot of land trust cases, or at least I don't speak for my colleagues, I don't. So the idea that one of the benefits of a land trust is that the beneficiary of a land trust who owns a personal property can transfer that without recording, in secrecy, that's not really correct. I guess that was my understanding. That's one of the main advantages, and this land trust, if it is one, doesn't have that at all. In fact, it works to the contrary. That's typically the case, but in this case, Melita, the primary settler, she could have done that, assigned her beneficial interest. The only variation here was Lindle, her son, she wanted to succeed to her, but she wanted to put restrictions on it like you would do in a normal trust situation. If there's concerns over that child or whatever, she wanted him just to have the income. She did not want him to have the ability to, in essence, convert it to cash and cash it out. But that's, you know, in a normal situation, you're correct. In a land trust, the beneficiary, that's one of the benefits. You know, they're freely assignable, they can sell their beneficial interest, or the original beneficiary can divide it into parts and, you know, gift or convey parts of it to family members. But they certainly also have the ability to restrict a successor interest in terms of what part of the beneficiary's rights they can exercise. One thing I would like to, we just noticed yesterday, that there was an error in our brief discussing the Whitman case. It's represented that was a case where the settler was also the trustee and the beneficiary. In that case, the trustee was intended to be Carrollton Banks. So it was a situation, it doesn't affect our analysis of Whitman, it's still a delivery case, but we just incorrectly stated that the settler equal the trustee. And I understand your argument to be there's also no problem with the settler being the trustee and also being the beneficiary in an Illinois land trust. Right. Our belief is that the Illinois Supreme Court in the comic case clearly, succinctly said that that's okay. They can all be one and the same. I have no further questions. Okay, thank you very much. Rebuttal now, please. Thank you. I'm not sure if counsel meant this or not, but what struck me is that they're relying on the wording of the amendment, which our position is invalid from the beginning. You can't use the amendment to correct the original trust if the original trust can't stand on its own. And I dispute counsel's position. I think the court's question brings that up, that you have to expressly preserve the right to amend or revoke. You don't do it by implication. I think that's the Springfield Marine Bank case that we cited in our brief. Additionally, this Conley case that the opposition seems to rely upon, that was a case that more or less stated what their position is, but it was basing that upon an earlier case which dealt with an inter-bibles trust that had only stocks as the rest of the trust or the corpus of the trust. It wasn't real estate. So that could not have been a land trust. And so therefore, that's a distinction that we think is important. So your position is that an Illinois land trust settlor cannot be the beneficiary and the trustee? That is our position. And for the reasons that you asked opposing counsel here a few minutes ago, many of the benefits of an Illinois land trust are lost if the grantor settlor is the trustee and particularly the way this trust was drafted. I mean, secrecy is one of the benefits. Avoiding judgments attaching to the real estate would be another benefit. And how is it secret if the name of the trustor is in the name of the trust? And it makes no sense. I mean, I don't think there was ever any intention to set up a land trust in this case. As I stated earlier, I think that was an afterthought. After we raised our position. There is language in the trust that the beneficiary of the trust would have personal property. That would seem to suggest there was an intent to create a land trust. As far as I know, that's the only way you can convert real estate into personal property. I know it's kind of a legal fiction. But the use of that language would suggest, would it not, that it was intended to be a land trust. Well, that would be one of the provisions that is commonly or almost always in a land trust document. But I think this document lacks other attributes which would bring us to that conclusion. Thank you. Thanks to all of you. The case is submitted and the court will stand in recess.